UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| BARRY DOOLEY, | : | |
| | : | Civil Action No. 21-4036 (JXN) (ESK) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| PAUL WALTER DASHER, PASSAIC COUNTY, JOHN AND JANE DOE(s) 1-10 (fictitious persons and/or entities yet to be identified), | : | |
| | : | |
| Defendants. | : | |

**NEALS**, District Judge:

This matter comes before the Court on two motions to dismiss Plaintiff Barry Dooley's ("Plaintiff") complaint (ECF No. 1) (the "Complaint") filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6): (i) Defendant Paul Walter Dasher's ("Dasher's") motion to dismiss (ECF No. 7) ("Dasher's Mot. to Dismiss"); and (ii) Defendant Passaic County's ("Passaic County") motion to dismiss (ECF No. 25) ("Passaic Cnty.'s Mot. to Dismiss"). Plaintiff filed opposition to Dasher's Mot. to Dismiss (ECF No. 10) ("Pl.'s Opp. to Dasher's Mot. to Dismiss") and Passaic County's Motion to Dismiss (ECF No. 26) ("Pl.'s Opp. to Passaic Cnty.'s Mot. to Dismiss"). Dasher and Passaic County filed replies (ECF Nos. 11, 27). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). Venue is proper pursuant to 28 U.S.C. § 1391.

The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Dasher's Motion to Dismiss (ECF No. 7) is **GRANTED**, and the Complaint in its entirety is **DISMISSED** *without prejudice*, and Passaic County's Motion to

Dismiss (ECF No. 25) is **DENIED as moot**. Plaintiff may file an amended complaint no later than 30 days from the date of this Order, or by October 6, 2023.

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

This is a civil rights action. Plaintiff alleges in pertinent part that he suffered a deprivation of civil rights following a 2014 Order entered by a New Jersey family court in response to Plaintiff's motion for reunification with his minor son, V.D. The following allegations are from the Complaint, which the Court assumes as true for the purpose of the motions only.

Plaintiff alleges that Dasher, a "licensed psychologist in the State of New Jersey[,]" and Passaic County "deprived [Plaintiff] of due process and from having an intimate familial association with" V.D. Compl. ¶¶ 1-4, 10. Plaintiff alleges that "[d]uring the course of Plaintiff's divorce proceedings," in *Marcela Dooley v. Barry Dooley*, PAS-FM-16-431-14 (the "State Matter"), "there was a custody battle over the children including, . . . the custody of V.D." *Id.* ¶¶ 11-12. In October 2014, Plaintiff "filed a motion" seeking "to reunite" with V.D. *Id.* ¶ 13. On October 22, 2014, the court entered an Order that "appointed [Dasher] to conduct a Psychological Evaluation of the parties and children . . . and a Best Interest Evaluation pertaining to parenting time . . . ." *Id.* ¶ 14; *see also* Ex. B of Melanie Rowan Quinn's July 20, 2021, Certification (ECF No. 7-2) (the "Quinn Cert."), the October 22, 2014, redacted Order (ECF No. 7-6) (the "Dasher Order"),[2] ¶ 3.

Plaintiff alleges that "Dasher's court ordered services for Plaintiff were to be performed at a rate of $1500." Compl. ¶ 17. Plaintiff alleges that when he "contacted . . . Dasher [by phone] in connection with the [Dasher Order], . . . Dasher demanded an amount of $5000[,]" which

---

[1] The Court refers to the ECF header page numbers for the documents discussed herein.
[2] Because the Dasher Order is "*integral to or explicitly relied* upon in the [C]omplaint[,]" the Court considers the Dasher Order "without converting" Dasher's Mot. to Dismiss "into [a motion] for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

2

"exceeded what Plaintiff could afford." *Id.* ¶ 18.  Further, that the $5,000 "retainer amount" is "more than the state imposed contractual amount." *Id.* ¶¶ 21, 24.  The face of the Dasher Order neither provides the alleged $1,500 retainer fee nor any other fee.

Plaintiff alleges that he "complained" to Dasher and to the court in the State Matter about Dasher's "inflated charge," that Dasher "did not reduce the retainer amount[,]" and that Dasher "refused to provide the court ordered service[,]" purportedly "due to Plaintiff's refusal to pay the increased retainer amount." *Id.* ¶¶ 21-23.  Plaintiff alleges that Passaic County "knew of . . . Dasher's regular demand for increased amounts in exchange for court ordered reports . . . related to . . . parent-child time in contested divorce proceedings." *Id.* ¶ 25.  Further, that due to "Dasher's conduct, Plaintiff was deprived of reunification with V.D. that continues into the present[,]" and that the lack of reunification has caused "severe and traumatic injuries to both Plaintiff and V.D." *Id.* ¶¶ 28-29.  Additionally, that "V.D. was hospitalized in 2020 as a proximate result of his alienation from Plaintiff, and interference with Plaintiff's due process rights." *Id.* ¶ 30.

On March 3, 2021, Plaintiff filed the Complaint against Dasher and Passaic County alleging the following claims: (i) Fourteenth Amendment Deprivation of Due Process Rights under 42 U.S.C. § 1983 (Count One); (ii) Fourteenth Amendment Deprivation of Procedural Due Process Rights under 42 U.S.C. § 1983 (Count Two); (iii) First Amendment Free Speech/Right to Familial Association Intimidation and Retaliation (Count Three); (iv) Municipal Liability against Passaic County only (Count Four); the (v) New Jersey Civil Rights Act, N.J.S.A. 10:6-2 (Count Five); (vi) Negligence (Count Six); (vii) Conspiracy (Count Seven); and (viii) Intentional Infliction of Emotional Distress against Dasher only (Count Eight).  This matter is ripe for the Court to decide.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. In considering a facial challenge in a Rule 12(b)(1) motion, the court must "consider the allegations of the complaint as true" (*see Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (citations omitted)), and decide whether "the allegations in the complaint are insufficient to demonstrate federal subject matter jurisdiction as the rule requires." *Doughty v. U.S. Postal Service*, 359 F.Supp.2d 361, 364 (D.N.J. 2005) (citation omitted). A factual challenge "involves an attack on the existence of subject matter jurisdiction in fact, quite apart from any pleading." *Id.* (citation and internal quotations omitted). "Dismissal is proper under Rule 12(b)(1) only where the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Cunningham v. Lenape Regional High Dist. Bd. of Educ.*, 492 F.Supp.2d 439, 446 (D.N.J. 2007) (citations and internal quotations omitted).

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a

claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

### III.     DISCUSSION

#### A.     Whether the Court May Consider Matters Extraneous to the Complaint

As an initial matter, Dasher, and Passaic County (together, the "Defendants"), argue that the Court should disregard materials attached to Pl.'s Opp. to Dasher's Mot. to Dismiss and Pl.'s Opp. to Passaic Cnty.'s Mot. to Dismiss. Defendants contend that in proffering the items, Plaintiff is "present[ing] to" the Court "matters outside the pleadings" that should not be considered. Fed. R. Civ. P. 12(d). Specifically:

1. "[P]ublic blog posts obtained via the world wide web about Defendant," *see* Pl.'s Opp. to Dasher's Mot. to Dismiss, at 21; *see also* Ex. A (ECF No. 10-2) (the "Blog Posts") to Jason A. Rindosh, Esq.'s August 16, 2021, Certification (ECF No. 10-1); Ex. A to Jason A. Rindosh, Esq.'s October 28, 2022, Certification (ECF No. 26-2) (the "Rindosh 2022 Cert.")[3];

2. A May 4, 2022, LexisNexis Deed Record search for 401 Grand Street, Paterson, New Jersey 07505 ("401 Grand Street") showing Passaic County is the owner of 401 Grand Street, *see* Ex. B to the Rindosh 2022 Cert.;

3. A September 1, 2022, Judges' Chambers Listing that includes chambers addressed at 401 Grand Street, *see* Ex. C to the Rindosh 2022 Cert.;

4. A May 19, 2022, LexisNexis Business Report that shows in 2001, the Passaic County Diagnostic Center was registered at 401 Grand Street and listed Dasher as the contact, *see* Ex. D to the Rindosh 2022 Cert.;

5. An article published by the Foundation for Child Victims of the Family Courts concerning an Order directing Dasher to conduct an evaluation in an unrelated matter, *see* Ex. E to the Rindosh 2022 Cert. (the "Foundation Article");

---
[3] *See* (ECF No. 26-3) for Exhibits A to G.

6. A December 10, 2019, First Amended Complaint filed against Dasher, Passaic County, and others, in the matter captioned *Estate of Jesse M. Rivera v. Passaic County, et al.*, No. 9-5218 (the "Rivera Lawsuit"), *see* Ex. F to the Rindosh 2022 Cert.; and

7. P. 59 of a Passaic County, New Jersey Notes to Financial Statements Years Ended December 31, 2012 and 2011 that reflects a settlement reached in the Rivera Lawsuit, *see* Ex. G to the Rindosh 2022 Cert. (the "Rivera Settlement")[4] (collectively, the "Exhibits").

Plaintiff requests that the "Court take judicial notice" of the Exhibits "without converting" the motions "into [] motion[s] for summary judgment." Pl.'s Opp. to Passaic Cnty.'s Mot. to Dismiss, at 12. Passaic County also requests that "the Docket Sheet . . . be considered as a matter of public record" (*see* Passaic Cnty.'s Reply Br., at 10, n.1 (emphasis removed)), which is the Docket Sheet that corresponds to the Rivera Lawsuit. *See* Ex. A (ECF No. 27-2) (the "Docket Sheet"), to Leslie S. Park's October 14, 2022, Certification (ECF No. 27-1) (the "Park 2022 Cert.").

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citation and internal brackets omitted). A motion to dismiss is "treated as one for summary judgment under Rule 56" if "matters outside the pleadings are presented to and not excluded by the court . . . ." Fed. R. Civ. P. 12(d). To be sure, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings" unless they are "*integral to or explicitly relied* upon in the complaint . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (citations omitted).

In reviewing the Complaint, the Exhibits appear to be "matters extraneous to the" Complaint. *Ibid.* Thus, the Court considers whether the Exhibits are "*integral to or explicitly

---

[4] Passaic County does not dispute that it "was a defendant in" the Rivera Lawsuit and that the Rivera Settlement accurately reflects Passaic County's settlement in the Rivera Lawsuit. Passaic Cnty.'s Reply Br. (ECF No. 27), at 9.

*relied* upon in the [C]omplaint." *Ibid.* (citations). Plaintiff concedes that the Complaint does not contain any allegations related to the Exhibits, and that he learned of the Exhibits after filing the Complaint. Pl.'s Opp. to Dasher's Mot. to Dismiss, at 21-22. Because the Exhibits do not appear to be "*integral to or explicitly relied* upon" in the Complaint, the Court may not consider the Exhibits in its decision here. The Court may, however, take judicial notice of certain "public records" contained in the Exhibits.

Courts may "take judicial notice of" a "public record, . . . as evidence of the information provided that was relevant to the dispute." *Doe v. Princeton University*, 30 F.4th 335, 342 (3d Cir. 2022) (citations and internal quotations and brackets omitted). "Courts have defined a public record, . . . to include criminal case dispositions[,] . . . letter decisions of government agencies, . . . and published reports of administrative bodies . . . ." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (citations omitted). The "Third Circuit has defined matters of public records narrowly . . ., essentially requiring that the document be a publicly available *government* record." *JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr.*, No. 18-5221, 2019 WL 1951123, *4 (D.N.J. May 2, 2019) (citation omitted). That means, "[t]he mere fact that a document is 'public' or 'publicly available' does not make it a 'matter of public record.'" *Ibid.* (citing *Schmidt v. Skolas*, 770 F.3d 241, 249-50 (3d Cir. 2014) ("refusing to consider a company's press release"); *Cole's Wexford Hotel, Inc. v. UPMC*, 127 F.Supp.3d 387, 417 n.14 (W.D. Pa. 2015) (finding that while "newspaper articles are publicly available, . . . they are not matters of public record for purposes of consideration on a motion to dismiss") (internal quotations and brackets omitted). "[M]aterials such as press releases, magazine[s,] and newspaper articles may be taken into account" only "if plaintiff relies on them in the complaint . . . ." *Madin v. Morris County, New Jersey*, No. 22-436, 2022 WL 3211416, *2 (D.N.J. Aug. 9, 2022) (citations omitted).

Here, the Court finds that the Blog Posts are not "public records" because they are not an "available *government* record." *JNL Mgmt, LLC*, 2019 WL 1951123, at *4 (citation omitted). In opposition to the Court considering the Blog Posts, Dasher argues that Plaintiff "improperly attache[d]" the Blog Posts, which contain "irrelevant, unsubstantiated hearsay online positing's from a single individual or possible multiple individuals . . . ." Dasher's Reply Br. (ECF No. 11), at 15, n.5 (internal quotations omitted). Dasher further argues that because "Plaintiff did not attach this material to his Complaint[,] and it should not be considered in the context of" Dasher's Mot. to Dismiss. *Id.* The Court agrees.

The Blog Posts contain a "Welcome" page dated December 7, 2007 that is signed by "LAM (Live Away Mom)[.]" Blog Posts, at 2. The Blog Posts provide that the posts are "intended as a forum for parents going through Child Custody disputes in Passaic, New Jersey[,] . . . is a place to share expenses[,]" and that "[n]othing [in the Blog Posts] is to be construed as legal advice." *Ibid.* Because the Blog Posts are not "*integral to or explicitly relied* upon" in the Complaint (*see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (citation omitted)), and are not a "public record[,]" the Court will not consider the Blog Posts in its decision here. For substantially the same reasons, the Court will not consider the Foundation Article. Conversely, the Court takes judicial notice of the May 4, 2022, LexisNexis Deed Record for 401 Grand Street; the September 1, 2022, Judges' Chambers Listing, the May 19, 2022, LexisNexis Business Report for 401 Grand Street; the Rivera Lawsuit; and Rivera Settlement. *See* (ECF No. 26-3). The Court finds that these documents are "public records[,]" or documents reflecting public record information.

Finally, Because the Court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[,]" (*see Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (citation omitted)), the Court

8

may consider the Docket Sheet. Ex. A to the Park 2022 Cert. In support of the conspiracy claim (Count Seven), Plaintiff argues that "[t]here is no explanation why Defendant Dasher operated in a courthouse located on property owned by Passaic County, why Defendant Dasher was permitted to operate under the name Passaic County Diagnostic Center for more than thirty years, or why Passaic County settled a lawsuit where Dasher and Passaic County Diagnostic Center were named defendants." Pl.'s Opp. to Passaic Cnty.'s Mot. to Dismiss, at 22. Because Plaintiff's conspiracy claim relies on the Rivera Lawsuit and Rivera Settlement, the Court considers the Docket Sheet as it reflects the filings and actions taken in the Rivera Lawsuit.

For similar reasons, the Court will consider Ex. C to the Quinn Cert., the October 28, 2014, Custody/Parenting Time Investigation, redacted Order (ECF No. 7-7) (the "Parenting Time Order"). Plaintiff alleges that Dasher was to provide the "court ordered services for Plaintiff . . . at a rate of $1500." Compl. ¶ 17. Like the Dasher Order, the Parenting Time Order does not provide the fee for the Psychological and Best Interest Evaluations. The Parenting Time Order does, however, provide that Plaintiff was to "pay 100%" for the evaluations. Plaintiff also does not dispute the truth and accuracy of the Parenting Time Order. Thus, the Court may consider the Parenting Time Order here.

B. **Whether the Court Has Subject Matter Jurisdiction**

Dasher argues that the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine ("*Rooker-Feldman*") because Plaintiff "is improperly asking this Court to review" the "judgment" of the court in the State Matter, and "overrule or 'appeal' its findings." Dasher's Br. (ECF No. 7-1), at 5. In opposition, Plaintiff argues that the Complaint is not barred by *Rooker-Feldman* "because Plaintiff is not seeking to overturn any underlying state court judgment or seeking injunctive relief." Pl.'s Mem. of Law (ECF No. 10), at 26. The Court agrees.

9

While Dasher does not state whether his motion to dismiss presents a facial or factual attack under Federal Rule of Civil Procedure 12(b)(1), Dasher appears to make a factual attack. In his brief, Dasher argues in pertinent part that "[a]ccording to the Complaint, [P]laintiff objected to the cost of the evaluation[,]" "complained to the Court[,]" and in being "[u]nhappy with the Family Court's denial of his complaint[,] . . . filed the instant Complaint . . . against the court-ordered evaluator[,]" Dasher. Dasher's Br., at 15-16. In support, Dasher cites *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 1798 (2011).

In *Great W. Mining & Min. Co.*, the court considered whether the *Rooker-Feldman* "precludes the exercise of subject matter jurisdiction . . . ." 615 F.3d at 161. The court noted that "[i]n certain circumstances, where a federal suit follows a state suit, *Rooker-Feldman* prohibits the district court from exercising jurisdiction." *Id.* at 163-64. In citing *Exxon Mobil Corp. v. Saudi Basic Industries, Corp.*, 544 U.S. 280 (2005), the court stated that *Rooker-Feldman* "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 164 (quoting *Exxon Mobil*, 544 U.S. at 284).

*Rooker-Feldman* is "a narrow doctrine that applies only in limited circumstances." *Id.* at 169 (citation and internal quotations omitted). *Rooker-Feldman* applies if: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id.* at 166 (citation and internal quotations and brackets omitted). The "second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Ibid*. The "second requirement—that a plaintiff must be complaining of injuries caused by the state-court judgment—may also be thought

10

of as an inquiry into the source of the plaintiff's injury." *Id.* at 166 (citations omitted). "[W]hen the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court . . . ." *Id.* at 167. The "critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Ibid.* (citation and internal quotations omitted).

Here, the Court finds that subject matter jurisdiction is established because the second and fourth requirements of *Rooker-Feldman*, *i.e.*, whether Plaintiff complained of injuries caused by the Dasher Order and whether Plaintiff invites the Court to review and reject the same, are not met. As to the second requirement, Plaintiff alleges that Dasher and Passaic County, and not the Dasher Order or Parenting Time Order (the "Orders") injured him. Compl. ¶¶ 17-21, 23-28. Thus, Plaintiff's claims are not based on injuries purportedly caused by the Orders, but Dasher's and Passaic County's alleged misconduct. *See Great W. Mining & Min. Co.*, 615 F.3d at 167 ("When . . . a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction.") (citations omitted). While such actions may have not occurred without the Orders, Plaintiff does not allege that the Orders caused his injuries. *See Melendez v. Shack*, No. 12-1925, 2013 WL 3873255, *10 (D.N.J. July 24, 2023) ("Here, Plaintiffs' injures were not caused by the state proceedings but the egregious conduct of DYFS employees thereafter.") (citation omitted). Indeed, the Complaint alleges "that the source of [Plaintiff's] alleged injury" is Defendants' purported actions, and "not the [Orders] themselves . . . ." *Luft v. Clerk of the Superior Court of New Jersey*, No. 19-11728, 2020 WL 967857, *5 (D.N.J. Feb. 28, 2020) (citation omitted).

Plaintiff's damages claim also does not depend on the Court overruling or invalidating the Orders. In *Great W. Mining & Min. Co.*, the court noted that plaintiff's "entitlement to [nominal] damages" as a result of the "alleged due process violation," could be "assessed without any analysis of the state-court judgments . . . ." *Id.* at 173 (citation omitted). Moreover, that while plaintiff's "claim for damages may require review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled for [plaintiff] to prevail." *Ibid.* Here, the Orders "did not cause the complained-of injuries such that *Rooker-Feldman* would apply" but rather, the alleged misconduct of Dasher and Passaic County. *Tobia v. Lakewood Bd. of Educ.*, 16-4850, 2020 WL 7334209, *5 (D.N.J. Dec. 14, 2020).

Similarly, in *Wilson v. The New Jersey Div. of Child Prot. and Permanency*, the court considered whether plaintiff was entitled to damages under civil rights claims related to the termination of plaintiff's parental rights. No. 13-3346, 2016 WL 316800 (D.N.J. Jan. 25, 2016). The court denied defendants' motion to dismiss for lack of subject matter jurisdiction after finding that while plaintiff's "claims, if granted, might tend to undermine the state court's conclusions," the claims "would not require that they be overruled" as the complaint "does not actually seek to invalidate the state court judgment in the sense of reversing the termination of [plaintiff's] parental rights." *Wilson*, 2016 WL 316800, at *4. Here, because Plaintiff does not seek that the Court overturn the Orders, and Plaintiff's prosecution of his claims do not require that the Orders be invalidated, *Rooker-Feldman* does not bar subject matter jurisdiction in this case.

Dasher's reliance on factually distinguishable cases in support of the *Rooker-Feldman* bar is unpersuasive. In *Khalil v. N.J. Div. of Child Prot. & Permanency*, the court found that it was a state court order, and not defendants' actions that terminated plaintiff's parental rights. 594 F.App'x 88, 90 (3d Cir. 2015). Unlike here, the plaintiff there did not "allege any conspiracy" or

agreement "on the part of the family court or state court judges who ultimately made the decisions affecting [plaintiff's] parental rights[,] . . . such that he has plead a constitutional claim independent of any harm he suffered as a result of the state-court decisions." *Id.* at 90-91 (citation omitted). Here, Plaintiff's claims are based on Dasher allegedly overcharging litigants like Plaintiff, and a conspiracy or agreement by Dasher and Passaic County to allow Dasher to continue to do so.

Similarly unpersuasive is *Peisch v. Ochs*, No. 18-11596, 2018 WL 3756446 (D.N.J. Aug. 8, 2018). The court in *Peisch* found that "[a]though Plaintiff asserts that Defendants caused his parental rights injuries, Defendants' actions that interfered with Plaintiff's contact with his children w[as] produced by the state-court judgment and not simply ratified, acquiesced in, or left unpublished by it." *Id.* at *2 (citation and internal quotations and brackets omitted). Moreover, the "suspen[sion]" of plaintiff's "parenting time" was attributed to plaintiff's failure to appear for a court ordered child-support hearing. *Id.* at 1. Accordingly, the case is distinguishable from the facts here.

Dasher also argues that for Plaintiff to "succeed on these claims, a federal court will need to overrule the New Jersey Family Court's finding that the fee was not excessive." Dasher's Reply Br. at 17. The Court disagrees. In assuming the allegations in the Complaint, Dasher's and Passaic County's purported misconduct could give rise to Plaintiff's claims regardless of whether a federal court finds that $5,000 was or was not excessive for the services directed in the Dasher Order.

As to the fourth requirement, the Complaint does not invite the Court to "overturn or invalidate" the Orders. *Luft*, 2020 WL 967857, at *5. Plaintiff is not "asking this Court to find that the New Jersey Family Court should have declared [P]laintiff indigent; that the New Jersey Family Court should have set a reduced fee for the court-ordered evaluation; and that the New Jersey Family Court should have ordered . . . Dasher, to perform the evaluation at a reduced fee."

13

Dasher's Br., at 18. Rather, Plaintiff seeks damages against Defendants, and not that the Court overturn or invalidate the Orders. Compl. at 14-15. Indeed, Plaintiff does not allege that the Orders were incorrect or that they should be overturned. The only mention of the State Matter court is Plaintiff's allegation that he "complained" of "Dasher's conduct" to the court. Compl. ¶¶ 22, 45. But this alone does not invite the Court to overturn the Dasher Order. At this juncture, Plaintiff raises "an independent constitutional claim that" Dasher's and Passaic County's conduct together, or independent of one another, allegedly "violated his" civil rights. *Great W. Mining & Min. Co.*, 615 F.3d at 161. Accordingly, subject matter jurisdiction is established. And because the Court finds that it has subject matter jurisdiction, Dasher's request that the Court decline to exercise supplemental jurisdiction is moot.

C.  **Whether The Complaint Is Barred by the Statute of Limitations**

Dasher and Passaic County argue that the Complaint is barred by the affirmative defense of statute of limitations. In support, Dasher contends that "[a]ll of [P]laintiff's claims are time-barred because they arise out of an incident that occurred and a state court judgment that was entered in . . . October 2014, more than six (6) years before [P]laintiff filed the instant Complaint." Dasher's Br., at 5; *see also* Passaic Cnty.'s Br. (ECF No. 25-2), at 27-29 (same). The Court agrees.

"Courts may grant a Rule 12(b)(6) motion based on a statute-of-limitations defense when the untimeliness of the plaintiff's claim(s) is apparent on the face of the complaint." *Rogalski v. Laureate Education, Inc.*, 22-3004, 2023 WL 2882702, at *3 (3d Cir. April 11, 2013) (citing *Schmidt*, 770 F.3d at 249; *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2022)). Indeed, the "law of this Circuit . . . permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been

14

brought within the statute of limitations." *Robinson*, 313 F.3d at 135 (citation and internal quotations omitted).

Dasher argues that all of Plaintiff's claims (Counts One to Eight) are subject to New Jersey's two-year statute of limitations for personal injury actions. Dasher's Br., at 7-9 (citing N.J.S.A. 2A:14-2(a)). In support, Dasher states that because the "events complained of occurred in . . . October 2014[,]" "[t]he statute of limitations on [P]laintiff's claims . . . expired in . . . October 2016, almost five (5) years ago."[5] Dasher's Br., at 8. The Court agrees. It is clear from the face of the Complaint that Plaintiff's claims are time barred. While the events that gave rise to this action occurred in 2014 (*see* Compl. ¶¶ 13-18, 21-27), the Complaint was not filed until March 3, 2021. Indeed, there is no dispute that Plaintiff's claims have a two-year statute of limitations. *See* Pl.'s Opp. to Dasher's Mot. to Dismiss, at 11 ("New Jersey law provides for a two-year statute of limitations for personal injury claims.") (citing N.J.S.A. 2A: 14-2); *see also Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 570 (3d Cir. 1976) (N.J.S.A. 2A: 14-2 "covers all personal injury claims."). Thus, a two-year statute of limitations applies to Plaintiff's § 1983 claims.[6] Pl.'s Opp. to Dasher's Mot. to Dismiss, at 11. As a result, "unless some basis for tolling applies," Plaintiff's claims "are untimely." *Jonas v. Gold*, 627 F.App'x. 134, 139 (3d Cir. 2015).

Plaintiff contends that the two-year statute of limitations should be tolled pursuant to the "discovery rule exception" (the "Discovery Rule") or "continuing violation doctrine [(the "Continuing Violations Doctrine")]. Pl.'s Opp. to Dasher's Mot. to Dismiss, at 12-13. Dasher counters that "[t]he discovery rule does not apply to toll [P]laintiff's claims because [P]laintiff was aware of the alleged wrongful conduct . . . and its implications when it occurred in October

---

[5] As of the date of this Decision, the statute of limitations expired approximately seven (7) years ago.
[6] Plaintiff does not dispute that a two-year statute of limitations also applies to Counts Four to Eight.

2014[,]" and that "[t]here is no series of acts to delay the running of the limitation period" such that the Continuing Violations Doctrine would apply. Dasher Reply Br. at 7, 9.

Federal courts "incorporate relevant state tolling rules." *Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005) (citations omitted). Because N.J.S.A. 2A: 14-2 is "silent as to when the cause of any such action shall have accrued[,]" the Discovery Rule has "evolved, . . . to the point where the statute did not begin to run until the injured party knew, or reasonably should have known, not only of the injury but also of the basis of an actionable claim." *Goodman*, 534 F.3d at 570 (citation omitted). Whether the Discovery Rule applies is a question of fact "to be decided by the court rather than the jury . . . ." *Id.* at 571. In determining its application, courts consider "[a]ll relevant facts and circumstances[,]" with a focus on "the nature of the alleged injury, . . . the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, [and] whether the delay may be said to have peculiarly or unusually prejudiced the defendant." *Ibid.*

Here, the Discovery Rule does not toll the two-year statute of limitations as applied to Plaintiff's claims. *See Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010) ("The discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person.") (citation omitted). Upon a review of the Complaint, Plaintiff was aware of his alleged injury in October 2014. And because Plaintiff filed suit against Dasher and Passaic County, Plaintiff was reasonably aware that such injury was attributed to Dasher's and Passaic County's alleged misconduct.

There is no question that Plaintiff "knew, or reasonably should have known, not only of the [alleged] injury but also of the basis of an actionable claim" in October 2014. *Goodman*, 534

F.2d at 570.  Indeed, Plaintiff should have been aware at several moments in 2014.  First, on October 22, 2014, when Dasher was appointed to conduct the Psychological and Best Interest Evaluations.  Compl. ¶ 14.  Second, when Plaintiff allegedly contacted Dasher and where Dasher purportedly told him that the amount for the requested Evaluations was $5,000 and not $1,500.  *Id.* ¶¶ 17-18.[7]  Third, when Dasher allegedly "refused to provide the court ordered services to Plaintiff due to Plaintiff's refusal to pay the increased retainer amount."  *Id.* ¶ 23.  Fourth, and finally, when Plaintiff allegedly "had no report to present to the court to support his reunification with V.D. resulting in Plaintiff to suffer a deprivation of his due process rights as well as his rights to familial association[,]" and further "deprived of reunification with V.D. . . . ."  *Id.* ¶¶ 27-28.

Based on the Complaint, it cannot be said that Plaintiff "d[id] not and" could not "know[] the facts that constitute[d] an actionable claim" in October 2014.  *Piscopo v. Pub. Serv. Elec. and Gas Co.*, 650 F.App'x. 106, 111 (3d Cir. 2016) (citation omitted).  Plaintiff was "on notice" (*see Fishbein Family P'ship v. PPG Indus.*, 307 F.App'x. 624, 627 (3d Cir. 2009)), of Dasher's and Passaic County's alleged misconduct at the time yet chose to wait until 2021 to file the Complaint.  Also, the Complaint does not allege that Plaintiff moved for reconsideration, or appealed the Orders or the unidentified Order that denied the reunification motion.  Compl. ¶¶ 13, 27.

---

[7] Plaintiff cites N.J.A.C. 13:42-12.6(a) for the first time to argue that he "was never informed of any fees in writing by" Dasher "as required under state law, and[,] [thus,] it was reasonable for Plaintiff to take time . . . to wade through the inherent delay of the family court system and to engage other professionals who informed him of the cap on fees."  Pl.'s Opp. to Passaic Cnty.'s Mot. to Dismiss (ECF No. 26), at 26-27.  In addition to being the first time Plaintiff has raised the provision, which is also absent from Pl.'s Opp. to Dasher's Mot. to Dismiss, the Complaint alleges only that "Dasher's court ordered services for Plaintiff were to be performed at a rate of $1500."  Compl. ¶ 17.  The Complaint does not allege that Dasher and Plaintiff had any communications beyond their initial phone call.  *Id.* ¶ 18.  Because the Court must determine whether "the complaint's factual allegations" are "sufficient to raise" Plaintiff's "right to relief above a speculative level," (*see Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F.Supp.3d 586, 596 (D.N.J. 2015) (citations and internal quotations omitted)), the Court does not "draw the reasonable inference that" Dasher and/or Passaic County are "liable for the misconduct alleged" based on N.J.A.C. 13:42-12.6 or Plaintiff's new allegations raised via opposition.  Indeed, Plaintiff neither alleged N.J.A.C. 13:42-12.6(a) or the new allegations in the Complaint, nor attached any material(s) in support.  *See EEOC v. Sears, Roebuck and Co.*, 391 F.Supp.2d 317, 319 (D.N.J. 2005) ("Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint are taken into consideration.") (citation omitted).

Though the only date certain alleged in the Complaint is October 22, 2014—the date the court in the State Matter entered the Dasher Order—the Court finds that the statute of limitations began to run sometime in 2014 and, most likely, on October 22, 2014.  In waiting until March 3, 2021, to file the Complaint or more than five (5) years after the two-year statute of limitations expired, the Court finds that the Discovery Rule does not apply, given the significant "length of time that has elapsed since the alleged wrongdoing . . . ."  *Goodman*, 534 F.2d at 571.  The Court is unable to determine "whether the delay" in filing the Complaint "has been to any extent deliberate or intentional . . . ."  *Goodman*, 534 F.3d at 571.  The Court, however, finds that Plaintiff's more than five (5) year delay[8] in bringing the Complaint "prejudice[s]" Dasher and Passaic County.  *Ibid.*  Thus, the Court finds that the Discovery Rule does not toll the statute of limitations.  The Complaint, therefore, is untimely.

In the alternative, Plaintiff argues that the Continuing Violations Doctrine tolls the statute of limitations because Plaintiff's alleged deprivation of "reunification with V.D. . . . continues into the present[,]" due to V.D.'s subsequent hospitalization in 2020.[9]  *Id.* ¶¶ 28, 30.  The Court disagrees.  The Continuing Violations Doctrine is an "equitable exception to the timely filing requirement."  *Cowell v. Palmer Tp.*, 263 F.3d 286, 292 (3d Cir. 2001) (citation omitted).  While the Continuing Violations Doctrine is normally applied in employment discrimination claims, it has been applied in "procedural due process claim[s] brought under § 1983[]."  *Cowell*, 263 F.3d at 292 (citations and internal parenthesis omitted).  To apply, courts consider "at least three factors:

---

[8] While Passaic County suggests that Plaintiff may have been "on notice" in 2015 (*see* Passaic Cnty.'s Br., at 29), the two-year statute of limitations would have still expired four (4) years before March 3, 2021.

[9] Plaintiff also references an alleged "2020 medical report [(the "2020 Medical Report")] [that] was consulted" as evidence that he was injured in 2020 due to "a continuing violation" of his civil rights.  Pl.'s Opp. to Dasher's Mot. to Dismiss, at 14.  Because the Complaint does not allege the existence of the 2020 Medical Report, and Plaintiff neither attached the 2020 Medical Report to the Complaint nor Plaintiff's Opp. to Dasher's Motion to Dismiss (*see Doe*, 961 F.3d at 208 (citation omitted)), the Court does not consider the allegation in its decision here.  Regardless, even if the 2020 Medical Report were considered, it would not trigger a tolling of the statute of limitations because the 2020 Medical Report was allegedly created in 2020—four (4) years after the expiration of the statute of limitations.

18

(1) subject matter—whether the violations constitute the same type of [misconduct], tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the acts had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Ibid.* (citation omitted).  As to the degree of permanence factor, courts "must consider the policy rationale behind the statute of limitations.  That is, the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." *Id.* at 295.

Like the Discovery Rule, the application of the Continuing Violations Doctrine is not appropriate here.  *See Gould v. Borough*, 615 F.App'x. 112, 116 (3d Cir. 2015) (Continuing Violations Doctrine "creates a narrow . . . exception to the timely filing requirement.") (citations and internal quotations omitted).  Plaintiff does not allege that Dasher and/or Passaic County continued to injury him, or that the harm alleged was more than an isolated incident.  Instead, Plaintiff contends that the "continual nature of this deprivation of Plaintiff's rights caused Plaintiff to not discover the severe emotional harm being inflicted on his son, V.D., as a result of his lack of companionship until he suffered a hospitalization in August of 2020." Pl.'s Opp. to Dasher's Mot. to Dismiss, at 13-14.  Such an argument, however, does not support application of the Continuing Violations Doctrine.  *See Bennett v. Susquehanna Cnty. Children & Youth Servs.*, 592 F.App'x. 81, 85 (3d Cir. 2014) ("[C]ontinuing violation is occasioned by continual unlawful acts, not continual ill effects from the original violation.") (quoting *Cowell*, 263 F.3d at 293).

Plaintiff's alleged injury is the denial of Plaintiff's reunification motion due in pertinent part to Dasher charging Plaintiff $5,000 for the evaluations.  Compl. ¶¶ 13-18, 21-27.  Even if

19

V.D.'s hospitalization was caused by Dasher's and Passaic County's alleged misconduct, it was not a "continual unlawful act," but a "continual ill" that flowed from the denial of the motion. The application of the Continuing Violations Doctrine would similarly not apply because "an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Ozoroski v. Maue*, 460 F.App'x. 94, 97 (3d Cir. 2012) (quoting *Cowell*, 263 F.3d at 292). If V.D. were hospitalized in August 2020, the Complaint would still have been filed four (4) years after the two-year statute of limitations expired in October 2016. Thus, V.D.'s hospitalization is outside the statute of limitations period. Therefore, the Court finds that Plaintiff's claims are barred, and neither the Discovery Rule nor Continuing Violations Doctrine toll the statute of limitations.

Because the only date alleged in the Complaint is October 22, 2014, Plaintiff failed to plead facts related to additional dates, if any, that are pertinent to this matter. Accordingly, and pursuant to Federal Rule of Civil Procedure 15(a)(2), the Court shall permit Plaintiff to file an amended complaint, should Plaintiff choose to do so.

IV.  **CONCLUSION**

For the reasons set forth above, Dasher's Motion to Dismiss (ECF No. 7) is **GRANTED**, and the Complaint in its entirety is **DISMISSED** *without prejudice*, and Passaic County's Motion to Dismiss (ECF No. 25) is **DENIED as moot**. Plaintiff may file an amended complaint no later than 30 days from the date of this Order, or by October 6, 2023.

An appropriate Order accompanies this Opinion.

DATED: 9/6/2023

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge